IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMES MICHAEL BERNARD, | ) | |
| | ) | Civil Action No. 14 – 115 |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Magistrate Judge Lisa Pupo Lenihan |
| | ) | |
| MICHAEL D. OVERMYER and KATHLEEN KANE, | ) ) | |
| | ) | |
| Respondents. | ) ) | |

**MEMORANDUM OPINION**

Before this Court is a Petition for Writ of Habeas Corpus filed by Petitioner James Michael Bernard ("Petitioner") pursuant to 28 U.S.C. § 2254. (ECF No. 1.) Petitioner challenges his judgment of sentence of life in prison without the possibility of parole, entered on March 22, 2007, in the Court of Common Pleas of Allegheny County, Criminal Division, docketed at Criminal Case Number CP-02-CR-0010022-2005, following his conviction for two counts of first-degree murder. For the following reasons, Petitioner's application for federal habeas corpus relief will be denied.

**A. Background**

The pertinent facts were summarized by the trial court in its Opinion dated December 20, 2007.

> On Easter Sunday, March 27, 2005, Ricardo Hudson and Richiena Porter were murdered in an apartment they shared with [Mr.] Larue Moore at 1400 Hill Street, Wilkinsburg Borough, Allegheny County, Pennsylvania. The defendant, James Bernard, reported the double homicide to police at approximately 11:15 a.m., when he flagged down Wilkinsburg police officer Michael J. Adams. The

defendant told police Ms. [Porter] was shot in the bathroom, but he never said who shot her. Furthermore, when asked if he [was] shot, the defendant said "no." The front of defendant's sweater appeared to have bloodstains which were noticed by Officer Adams. The sweater was taken as evidence and the bloodstains came back as matching the DNA of Richiena Porter.

When [Mr.] Moore had left for [work] at approximately 9:00 a.m., the house was occupied by both victims[,] four girls who had driven up from Virginia the night before, identified as Charlotte Tillman, Tanyce Fry, Ashley Wood, and Stacey Kennedy, and Dewayne Hart and the defendant. [Mr]. Moore owned a 25-caliber handgun, which [he] kept in [his] bedroom closet in Philly's cigar box. The police found the box, but [the] gun was never recovered. The only fingerprints found on the box belonged to Richiena Porter. The victims were shot with a 25-caliber handgun.

When the girls from Virginia left the apartment at 1400 Hill Street with Dewayne Hart, Richiena Porter was taking a shower and Mr. Hudson was asleep in the back bedroom and James Bernard was the only other person in the apartment.

When they returned a short time later, the defendant was outside the apartment and told them they were not allowed back inside. However, Hart entered the apartment to retrieve his electronic game. He believed Ms. Porter was still in the shower because he heard the water running and that Mr. Hudson was still asleep on the floor in the back bedroom. The only thing in the apartment that Hart noticed [that] was different was that a T.V. that had been in the living room was gone. The T.V. was found in the shower where Ms. Porter was shot. When the police arrived at the apartment, the door had been locked and there was no evidence of a forced entry. Officer Bender found Ricardo Hudson lying face down in the back bedroom. He also saw that Ms. Porter was lying in the bathtub with the upper part of her body resting outside the tub. She was still alive at the time she was found.

During the investigation, the Allegheny County Homicide Detectives recovered bullet casings which were found to be fired from the same weapon.

At trial the Commonwealth and Defense stipulated that Dr. Levine, of the Allegheny County Crime Lab, a firearms expert would have opined that a 25-caliber is a small automatic. Further, that a hair sample removed from Ricardo Hudson's wound and examined microscopically for gunpowder particles showed two small flattened ball gunpowder particles. James Bernard's gunshot residue test was negative. This was not conclusive of the issue of his firing a weapon because the test was done three hours after the incident, he had been handcuffed behind his back and had changed clothes. A positive test of Mr. Hudson's right hand was consistent with that hand being closest to his head when the body was found.

> It was further stipulated that Tom Meyer, an expert on blood samples with the Allegheny County Crime Lab, would have testified that blood found on Mr. Bernard's left shoe was tested for DNA and was consistent with the DNA of Richiena Porter.
>
> Finally, there was a stipulation, [that] Dr. Shakir [of] the Allegheny County Medical Examiner's [Office] [would testify] as to the causes of death of both Mr. Hudson and Ms. Porter as gunshot wounds to the head, based upon the examination by the Allegheny County Medical Examiner's Office, provided by Dr. Shakir.

(Resp't Ex. 7, ECF No. 9-1 at pp.34-36) (internal citations omitted). Petitioner was found guilty of two counts of First Degree Murder and sentenced to two consecutive life sentences. (Resp't Ex. 4, ECF No. 9-1 at p.22.) After an Opinion was filed by the trial judge pursuant to Pa. R.A.P. 1925(a) on December 20, 2007, (Resp't Ex. 7, ECF No. 9-1 at pp.33-39), the Superior Court affirmed Petitioner's judgment of sentence in an unpublished memorandum dated October 16, 2008, (Resp't Ex. 10, ECF No. 9-4). Petitioner then filed a Petition for Allowance of Appeal with the Supreme Court of Pennsylvania, which was denied by Order dated May 14, 2009. (Resp't Ex. 11, ECF No. 9-5; Ex. 14, ECF No. 9-6 at p.5.)

On March 9, 2010, Petitioner filed a *pro se* Petition for relief under Pennsylvania's Post-Conviction Relief Act ("PCRA"). (Resp't Ex. 15, ECF No. 9-6 at pp.6-21.) Attorney Scott Coffey was subsequently appointed as PCRA counsel, but he filed a Motion to Withdraw as PCRA counsel with a "no merit" letter on August 31, 2011. (Resp't Ex. 16, ECF No. 9-6 at p.22; Ex. 17, ECF No. 9-6 at pp.23-37.)

On September 12, 2011, the trial judge issued a Notice of Intent to Dismiss the PCRA petition without a hearing. (Resp't Ex. 18, ECF No. 9-7 at p.1.) Petitioner filed a response to the Notice of Intent to Dismiss, (Resp't Ex. 19, ECF No. 9-7 at pp.2-6), but the trial judge issued an Order dismissing the PCRA on October 4, 2011 (Resp't Ex. 20, ECF No. 9-7 at p.7).

Petitioner filed a Notice of Appeal on October 20, 2011. (Resp't Ex. 21, ECF No. 9-7 at pp.8-11.) The trial judge filed his Pa. R.A.P. 1925(a) Opinion on October 18, 2012. (Resp't Ex. 23, ECF No. 9-7 at pp.16-28.) On June 25, 2013, the Superior Court issued an unpublished opinion affirming the trial judge's dismissal of the PCRA petition without a hearing. (Resp't Ex. 26, ECF No. 9-10.)

Petitioner filed a *pro se* Petition for Allowance of Appeal with the Supreme Court of Pennsylvania on July 25, 2013. (Resp't Ex. 27, ECF No. 9-11.) The Supreme Court denied the petition on December 17, 2013. (Resp't Ex. 29, ECF No. 9-13.)

Petitioner filed the instant Petition for Writ of Habeas Corpus on January 27, 2014. (ECF No. 1.) The Petition raises four claims, summarized as follows:

1. Ineffective assistance of counsel when trial counsel failed to dispute the evidence that the male victim did not fire a gun.

2. Ineffective assistance of counsel when direct appeal counsel argued diminished capacity.

3. Ineffective assistance of counsel when trial counsel stipulated to limited results from a blood expert.

4. Ineffective assistance of counsel when trial and appellant counsel failed to correct the lower court statement of changing of clothes.

Respondents filed their Answer to the Petitioner on April 30, 2014. (ECF No. 9.)

### B. Standard of Review

Under 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214, April 24, 1996 ("AEDPA"), habeas relief is only available on the grounds that Petitioner's judgment of sentence was obtained in violation of his federal constitutional rights. 28 U.S.C. § 2254(a).

As codified at 28 U.S.C. § 2254(d), AEDPA provides:

4

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was *contrary to,*[1] or involved an *unreasonable application of,*[2] *clearly established Federal law, as determined by the Supreme Court of the United States*; or
>
> (2) resulted in a decision that was based on an *unreasonable determination of the facts in light of the evidence presented in the State court proceeding.*[3]

---

[1] "The test for § 2254(d)(1)'s 'contrary to' clause is whether the state court decision 'applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or if it contradicts a set of facts that is materially indistinguishable from a decision of [the Supreme] Court but reaches a different result.' Brown v. Payton, 544 U.S. 133, 141 (2005) (citing Williams v. Taylor, 529 U.S. 362, 405 (2000), and Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002)). Of course, a state court's resolution of a question that the Supreme Court has not resolved can be neither contrary to, nor an unreasonable application of, the Court's precedent. *See* Kane v. Garcia Espitia, 546 U.S. 9 (1995)." Roundtree v. Balicki, 640 F.3d 530, 537 (3d Cir. 2011) (bracketed text in original) (parallel citations omitted).

[2] "The test for § 2254(d)(1)'s 'unreasonable application of' clause is as follows: '[a]n 'unreasonable application' occurs when a state court 'identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts' of petitioner's case.' Rompilla v. Beard, 545 U.S. 374, 380 (2005) (quoting Wiggins v. Smith, 539 U.S. 510, 519, 520 (2003)). For purposes of § 2254(d)(1), '[i]t is not enough that a federal habeas court, in its independent review of the legal question, is left with a firm conviction that the state court was erroneous.' Lockyer v. Andrade, 538 U.S. 63, 75 (2003) (internal quotations omitted). "Under § 2254(d)(1)'s 'unreasonable application' clause . . . a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.' Id. at 75-76, 123 S. Ct. 1166 (quoting Williams v. Taylor, 529 U.S. 362, 411 (2000)). Rather, '[t]he state court's application of clearly established law must be objectively unreasonable' before a federal court may grant the writ. Andrade, 538 U.S. at 75." Roundtree, 640 F.3d at 537 (parallel citations omitted).

[3] "The test for § 2254(d)(2)'s 'unreasonable determination of facts' clause is whether the petitioner has demonstrated by 'clear and convincing evidence,' § 2254(e)(1), that the state court's determination of the facts was unreasonable in light of the record. *See* Rice v. Collins, 546 U.S. 333, 338-39 (2006) ('State-court factual findings, moreover, are presumed correct; the petitioner has the burden of rebutting the presumption by 'clear and convincing evidence.'") (quoting § 2254(e)(1)) (citing Miller-El v. Dretke, 545 U.S. 231, 240 (2005)); *see also* Simmons v. Beard, 590 F.3d 223, 231 (3d Cir. 2009) ('Under the § 2254 standard, a district court is bound to presume that the state court's factual findings are correct, with the burden on the petitioner to

(Emphasis added). Importantly, regardless of whether a state court has adjudicated a claim on the merits so as to invoke review under the standard set forth in § 2254(d), under 28 U.S.C. § 2254(e)(1) a federal habeas court must presume that all of the state court's factual findings are correct unless the presumption is rebutted by "clear and convincing evidence." *See*, *e.g.*, Palmer v. Hendricks, 592 F.3d 386, 392 (3d Cir. 2010) (citing 28 U.S.C. § 2254(e)(1)). *See also* Weeks v. Snyder, 219 F.3d 245, 259 (3d Cir. 2000) (quoting Marshall v. Longberger, 459 U.S. 422, 434 (1983), for the proposition that habeas review does not permit a federal court to redetermine the credibility of witnesses whose demeanor has been observed by the state court); Miller-El v. Cockrell, 537 U.S. 322, 339-41 (2003).

### C. Ineffective Assistance of Counsel

Petitioner raises four ineffective assistance of counsel claims. Ineffective assistance of counsel claims are "governed by the familiar two-prong test set forth in Strickland v. Washington, 466 U.S. 668 (1984)." Shelton v. Carroll, 464 F.3d 423, 438 (3d Cir. 2006) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003)). For AEDPA purposes, the Strickland test qualifies as "clearly established Federal law, as determined by the Supreme Court." Williams v. Taylor, 529 U.S. 362, 391 (2000). Under Strickland, a habeas petitioner must demonstrate that: (1) counsel's representation fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's error, the result would have been different. 466 U.S. at 687. For the deficient performance prong, "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms." Id. at 688. To establish

---

rebut those findings by clear and convincing evidence.'). Importantly, the evidence against which a federal court measures the reasonableness of the state court's factual findings is the record evidence at the time of the state court's adjudication. Cullen v. Pinholster, – U.S. – [ ], 131 S. Ct. 1388, 1401-03 (2011)." Roundtree, 640 F.3d at 537-38 (parallel citations omitted).

prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

With respect to the sequence of the two prongs, the Strickland Court held that "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." 466 U.S. at 697. In assessing an ineffective assistance of counsel claim, "the ultimate focus of inquiry must be on the fundamental fairness of the proceeding . . . . In every case the court should be concerned with whether . . . the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results." Id. at 696.

### D. Discussion

#### 1. Ineffective assistance of counsel when trial counsel failed to dispute the evidence that the male victim did not fire a gun.

Petitioner first argues that his trial counsel was ineffective for failing to dispute the Commonwealth's claim that the male victim was shot while sleeping, and did not fire a gun. In addressing this claim in his Pa. R.A.P. 1925(a) Opinion, the trial judge found as follows:

> . . . . Defendant argues that counsel was ineffective for failing to dispute evidence that he was not the shooter because of Mr. Hudson's body position. Specifically, that because Mr. Hudson was asleep on his hand at the time he was shot, it would be impossible for there to be gunshot residue on that hand.
>
> This argument is illogical because of Mr. Hudson's body position at the time of his death. Police officers found Mr. Hudson lying face down with two bullet holes in the back of his head; the victim was dead, although it appeared as

7

if he were sleeping on his arm. (N.T. pp. 278, 286-288). Furthermore, Defendant fails to prove or provide any substantive evidence showing that he was not the shooter; rather [Defendant] merely makes a conclusory statement of ineffective assistance of counsel. Lastly, stipulations are a matter of trial strategy and deference is given to the respective counsel. Therefore Defendant fails to satisfy the standard to allow his PCRA to be granted on this issue.

(Resp't Ex. 23, ECF No. 9-7 at p.23.) On appeal, the Superior Court found as to this claim as follows:

> Appellant's . . . claim is trial counsel was ineffective in failing to dispute the Commonwealth's claim Mr. Hudson was shot while he was sleeping, and not as he was firing a weapon, since the crime scene photographs showed Mr. Hudson was found with his hand under his body.
>
> While Appellant's appellate argument in this regard is not entirely clear, it appears he is suggesting he shot Mr. Hudson in self-defense, based on Mr. Hudson's body position, and trial counsel should have raised this claim.
>
> To the extent this claim was adequately raised in the PCRA court below, we find the underlying claim to be meritless, and therefore, counsel cannot be deemed ineffective on this basis.

(Resp't Ex. 26, ECF No. 9-10 at pp.8-9) (internal citation and footnote omitted).

Because the state court rejected Petitioner's ineffective assistance of counsel claim on the merits, this Court must review it under AEDPA's standard of review, which is set forth at 28 U.S.C. § 2254 and in section C, *supra*.

Under AEDPA, review is to proceed as follows.

> . . . . "[W]e must first identify the applicable Supreme Court precedent and determine whether it resolves the petitioner's claim." *Id.* (citing *Matteo,* 171 F.3d at 888). To do so, "it is not sufficient for the petitioner to show merely that his interpretation of Supreme Court precedent is more plausible than the state court's; rather, the petitioner must demonstrate that Supreme Court precedent requires the contrary outcome." *Id.* (quoting *Matteo,* 171 F.3d at 888). "If we determine that the state court decision is not 'contrary to' the applicable Supreme Court precedent, then we are required to advance to the second step in the analysis- whether the state court decision was based on an 'unreasonable application of' Supreme Court precedent." *Id.* (citing *Matteo,* 171 F.3d at 888). In performing this inquiry, "we are not authorized to grant habeas corpus relief simply because

we disagree with the state court's decision or because we would have reached a different result if left to our own devices." *Id.* (citing *Matteo,* 171 F.3d at 889). Rather, the state court's application of Supreme Court precedent must have been "objectively unreasonable," *i.e.,* "[t]he federal habeas court should not grant the petition unless the state court decision, evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent." *Id.* (quoting *Matteo,* 171 F.3d at 890); *see also Price v. Vincent,* 538 U.S. 634, 636, 643, 123 S.Ct. 1848, 155 L.Ed.2d 877 (2003) (unanimously reversing a decision to grant habeas relief as "exceed[ing] the limits imposed on federal habeas review by 28 U.S.C. § 2254(d)" because "[e]ven if we agreed with the Court of Appeals that the Double Jeopardy Clause should be read to prevent continued prosecution of a defendant under these circumstances, it was at least reasonable for the state court to conclude otherwise.").

Hackett v. Price, 381 F.3d 281 (3d Cir. 2004) (citing Werts v. Vaughn, 228 F.3d 178, 196-97 (2000)).

First, the "clearly established Federal law" in which to analyze Petitioner's ineffective assistance claims is set forth in Strickland, *supra*, and the state court applied this standard to Petitioner's ineffectiveness claim.[4] With regard to the first inquiry under AEDPA, Petitioner has not demonstrated that Strickland "requires the contrary outcome" with respect to his ineffectiveness claim, and therefore, the state courts' adjudication of this claim was not "contrary to" Strickland. *See also* Werts, 228 F.3d at 202-04 ("[A] state court decision that applied the Pennsylvania [ineffective assistance of counsel] test did not apply a rule of law that contradicted Strickland and thus was not 'contrary to' established Supreme Court precedent.").

The dipositive question, then, is whether the state courts' adjudication of Petitioner's ineffective assistance of counsel claim was an "unreasonable application" of Strickland. It was not. In order to overcome AEDPA's standard of review, Petitioner must show that the state

---

[4] Although Pennsylvania courts typically articulate a three-prong test for gauging ineffective assistance claims, and Strickland sets forth its test in two prongs, the legal evaluation is the same, and the difference merely reflects a stylistic choice on the part of state courts. *See* Werts, 228 F.3d at 202–03.

courts' decision "cannot reasonably be justified under existing Supreme Court precedent[,]" Matteo, 171 F.3d at 890, and, he falls far short of meeting this burden.

Here, the state courts found Petitioner's claim to be meritless and his argument illogical. The trial judge interpreted Petitioner's claim as an assertion that he was not the shooter because Mr. Hudson (the male victim) was found with gunshot residue on his hand, and it is therefore impossible for there to be gunshot residue on Mr. Hudson's hand unless Mr. Hudson had, in fact, fired a weapon. On the other hand, the Superior Court interpreted Petitioner as raising a self-defense claim. Regardless of Petitioner's argument, Petitioner offered no evidence to the state court beyond an argument that he was not the shooter. Furthermore, Petitioner ignored the stipulation at trial: gunshot residue was found on the back of Mr. Hudson's hand, which was consistent with firing of the weapon approximately 18 inches away from the victim's head, and thus consistent with the Commonwealth's contention that Petitioner shot the victim execution-style while he slept.

Petitioner has simply not met his burden under 28 U.S.C. 2254(d) by showing that the state court's disposition of this claim was an objectively unreasonable application of Strickland. Furthermore, the state court's decision was not an unreasonable determination of the facts in light of the evidence presented. Relief will therefore be denied.

### 2. Ineffective assistance of counsel when direct appeal counsel argued diminished capacity.

Petitioner's next claim is that he was always "not guilty" and therefore his appellate counsel was ineffective for arguing "diminished capacity," which was tantamount to "a plea of guilty." First, the state courts found that this claim was waived due to Petitioner's failure to adequately develop it in his appellate brief and therefore declined to review the claim on its

merits. (Resp't Ex. 23, ECF No. 9-7 at p.25; Ex. 26, ECF No, 9-10 at p.17.) For this reason, the claim is procedurally defaulted.[5]

However, even if this claim were reviewed *de novo*,[6] it would be denied. This Court finds that Petitioner cannot demonstrate that he suffered any prejudice as a result of appellate

---

[5] Citing <u>Commonwealth v. Frey</u>, 41 A.3d 605, 613-14 (Pa. Super. 2012), the Superior Court stated that it "decline[d] to craft an appropriate argument for [Petitioner], and thus, find his issue to be waived on this basis." (Resp't Ex. 26, ECF No. 9-10 at p.17.) Though the Superior Court did not cite any state procedural rule as a basis for its decision, the waiver rule relied on by the Superior Court is derived from Pa. R.A.P. 2119. Pa. R.A.P. 2119(a) states, "The argument shall be . . . followed by such discussion and citation of authorities as are deemed pertinent."

Petitioner's claim is procedurally defaulted because Pa. R.A.P.'s 2119's waiver rule is adequate to support the state court's judgment and independent of federal issues. *See* <u>Sistrunk v. Vaughn</u>, 96 F.3d 666, 673 (3d Cir. 1996) ("[I]f the state court presented with [the] federal claim refuses to decide its merits based on an established state rule of law independent of the federal claim and adequate to support the refusal, federal habeas review is foreclosed unless there is cause and prejudice or a showing of innocence.") (citing <u>Coleman v. Thompson</u>, 501 U.S. 722, 750 (1991)); *see also* <u>Branch v. Tennis</u>, 2009 WL 1089560, at *10 (E.D. Pa. Apr. 22, 2009) (finding that the state waiver rule found in Pa. R.A.P. 2119 constituted an adequate and independent bar to federal habeas review); <u>Kimon v. Klopotoski</u>, 620 F.Supp.2d 674, 689 (E.D. Pa. Dec. 17, 2008) (failure to comply with Pa. R.A.P. 2119 constitutes independent and adequate procedural grounds that bar habeas review); <u>Williams v. Patrick</u>, 2014 WL 2452049, at *6-7 (E.D. Pa. June 2, 2014) (Pa. R.A.P. 2119 has been recognized as an independent and adequate state law ground since at least 2004). Moreover, Petitioner cannot overcome this procedural default because he does not demonstrate, or attempt to demonstrate, cause and prejudice and has not made, or attempted to make, a colorable showing of actual innocence. *See* <u>Werts v. Vaughn</u>, 228 F.3d 178, 192-93 (3d Cir. 2000) (A petitioner can overcome procedural default, and thereby empower the habeas court to entertain the merits of the habeas claim, with a showing of "cause and prejudice" or by demonstrating a fundamental "miscarriage of justice."); *see also* <u>Schlup v. Delo</u>, 513 U.S. 298, 321 (1995) (The miscarriage of justice exception is "explicitly tied . . . to the petitioner's innocence.")

[6] In instances where a state court has not adjudicated a claim on the merits, the deference normally required by § 2254 does not apply and the federal habeas court applies *de novo* review to pure legal questions and to mixed questions of law and fact. *See* <u>Simmons v. Beard</u>, 590 F.3d 223, 231 (3d Cir. 2009); <u>Thomas v. Varner</u>, 428 F.3d 491, 497 (3d Cir. 2005). *See also* <u>Williams v. Superintendent, SCI Greene</u>, No. 11-cv-4319, 2012 WL 6057929, at *1 n.4 (E.D. Pa. Dec. 04, 2012) (applying *de novo* review to a claim of cumulative error that the state courts had not considered). Even on *de novo* review of a habeas claim, the state court's factual determinations

counsel arguing diminished capacity on direct appeal. This is because the Superior Court rejected the claim on the basis that it was always Petitioner's position that he was innocent. (Resp't Ex. 10, ECF No. 9-4 at p.8) ("the evidence of voluntary intoxication was irrelevant, given that appellant's defense was that he did not commit the killings.")

Furthermore, in addition and in the alternative to the diminished capacity argument, appellate counsel continued to maintain Petitioner's "innocence" claim by challenging the weight of the evidence. *See* Resp't Ex. 10, ECF No. 9-4 at pp.11-12 (In challenging the weight of the evidence, Petitioner argues that "the Commonwealth failed to produce the murder weapon, failed to produce evidence of gunshot residue on [Petitioner's] clothing, failed to advance any motive for the killings, and failed to provide the fact finder with any evidence that [Petitioner] was the person who killed the victims.") Given that this claim was raised and rejected based on the "overwhelming" amount of evidence of guilt, as opposed to a finding that Petitioner admitted guilt by arguing diminished capacity, Petitioner cannot demonstrate prejudice. In short, the fact that appellate counsel raised a diminished capacity claim on direct appeal failed to prejudice Petitioner in any way whatsoever and was also reasonable given that maintaining innocence was not a viable appellate strategy in light of the trial judge's factual findings. For the aforementioned reasons, Petitioner is not entitled to habeas relief on this claim.

### 3. **Ineffective assistance of counsel when trial counsel stipulated to limited results from a blood expert.**

Petitioner's third claim is that he was denied effective assistance of counsel when trial counsel stipulated to limited results from a blood expert because an unknown individual's blood

---

are still presumed to be correct, unless a petitioner rebuts them with clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

was found on his shoe. Petitioner presented this claim to the state courts in his PCRA petition, and, in his Pa. R.A.P. 1925(a) Opinion, the trial judge found as follows:

> Defendant next argues that his trial counsel was ineffective when it stipulated to the results from a blood expert's analysis, because it did not account for an unknown sample found on his shoe.
>
> Defendant does not prove or offer any substantive evidence that additional blood testing would render a different verdict. First, the unknown blood sample could have come from anywhere, e.g., it could have been on Defendant's shoe prior to the slaying. Second, Ms. Porter's blood was found not only on Bernard's shoe, but also on the front of his sweater. Third, Defendant's argument concerns a stipulation, which as a matter of trial strategy requires a court to give deference to the attorney's decision. Defendant's allegation is not based on fact and is without merit.

(Resp't Ex. 23; ECF No. 9-8 at p.22.) On appeal, the Superior Court found that this claim was waived due to Petitioner's failure to develop his argument. (Resp't Ex. 26; ECF No. 9-10 at pp.6-7.) For this reason, his claim is now procedurally defaulted. *See* FN5.

However, this claim too would be denied even if reviewed *de novo*. *See* FN6. Petitioner offered no argument to the state court in support of how he was prejudiced by counsel's stipulation or why this trial strategy was unreasonable. A stipulation was entered that three of the blood stains on the blue sweater matched the female victim's DNA profile. Another stipulation was entered that the fourth blood stain on the sweater and a blood stain on Petitioner's left shoe were consistent with a mixture and that the female victim could not be excluded as a primary contributor of the DNA.

Assuming Petitioner is referring to the fact that one of the stains on the sweater and the one on the shoe was a mixture of the "real" shooter, it was nevertheless established that this blood was consistent with the DNA of the female victim. Once again, Petitioner fails to explain how he was prejudiced by this stipulation. Therefore, this claim must be denied.

### 4. Ineffective assistance of counsel when trial and appellant counsel failed to correct the lower court statement of changing of clothes.

Petitioner's fourth claim is that he was denied effective assistance of counsel when both his trial and appellate counsel failed to correct the lower court findings of fact regarding changing his clothes. Petitioner alleges both that he did not change clothes after discovering the bodies and leaving the crime scene and that the court erred in inferring the reason that there was no gunshot residue on him was because he changed his clothing. Petitioner raised this claim in his PCRA petition and it was addressed by the trial judge in his Pa. R.A.P. 1925(a) Opinion as follows:

> Seventh, Defendant argues that counsel was ineffective for not correcting the court's alleged statement that he had changed his clothes. Specifically, Defendant states that the court was incorrect for inferring that the reason the gunshot residue test came back negative [was] because he changed his clothes. The Court made no such inference. Defendant's argument fails to prejudice him in any way, even assuming its truth. In a stipulation with the Commonwealth, at trial, counsel agreed Defendant had been handcuffed behind his back, was tested three hours after the shooting, and had changed his clothes. (T.T. pp. 366-367). Thus, even assuming that defendant actually changed his clothes, there was enough evidence in the stipulation that he could have fired the weapon; for instance the gunshot residue may have simply fallen off his hands due to the passage of time between the shooting and the testing, or it could have been wiped away while he was handcuffed behind his back. The lack of residue was not dispositive of whether defendant had fired a gun. Defendant fails to satisfy the standard to allow his PCRA to be granted on this issue.

(Resp't Ex. 23; ECF No. 9-7 at pp.24-25.) On appeal, the Superior Court found as follows:

> Appellant's seventh claim is trial counsel was ineffective in failing to object to an alleged statement made by the trial court, which improperly implied the reason there was no gunshot residue on Appellant's clothes was due to the fact he had changed them after the shooting.
>
> To the extent this issue was suggested by Appellant's PCRA petition, we find no relief is due. Initially, we note Appellant has not set forth that place in the record where the trial court made the alleged statement, and in any event, as the PCRA court noted in its opinion, "The Court made no such inference." PCRA Court's Opinion filed 10/18/12 at 10. Moreover, as the PCRA court indicated,

> had the trial court specifically made this finding of fact, there would have been no basis for trial counsel to object since such would have been based on the parties' stipulation. ***See id***. That is, at trial, the parties stipulated that, if Dr. Levine was called to testify, he would have opined, *inter alia*, "the defendant was swabbed more than three hours later, handcuffed behind his back, had his clothes changed, and it was not unusual for there to be no gunshot residue on his hands." N.T. 3/19/07 at 366-67. Finally, as the PCRA court noted in its opinion, Appellant was not prejudiced by any trial court statement, which implied the reason there was no gunshot residue on Appellant's clothes was due to the fact he had changed them after the shooting, since the "lack of residue was not dispositive of whether [Appellant] had fired a gun." PCRA Court's Opinion filed 10/18/12 at 10. Thus, we decline to find trial counsel ineffective on this basis. ***See Rios, supra***.

(Resp't Ex. 26; ECF No. 9-10 at pp.15-17.)

Similar to Petitioner's first claim, the state court applied the Strickland standard to this claim of ineffective assistance, and Petitioner has not demonstrated that Strickland "requires the contrary outcome." Therefore, the state courts' adjudication of this claim was not "contrary to" Strickland. *See* Werts, *supra*.

Neither was the state courts' adjudication of this claim an "unreasonable application" of Strickland because there was record evidence to support the notion that Petitioner changed his clothes and Judge Sasinoski was entitled as factfinder to make this finding. Nevertheless, despite the stipulation, the trial court specifically stated that it did not infer that the reason the gunshot residue test came back negative was because he changed his clothes. Because Petitioner did not demonstrate to the state court that he suffered prejudice as a result of trial and appellate counsels' alleged error, the state court's adjudication of this claim was not an unreasonable application of Strickland. Nor was it an unreasonable determination of the facts. Petitioner has failed to meet his burden under both 28 U.S.C. § 2254(d)(1)-(2). Therefore, relief will be denied as to this claim.

15

### E. Certificate of Appealability

A court should issue a Certificate of Appealability where a petitioner makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner meets this burden by showing that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000). We find that jurists of reason would not find it debatable whether Petitioner states a valid claim of the denial of a constitutional right, and jurists of reason would not find debatable the issue of whether this Court were correct in concluding that the Petition does not present any claims upon which habeas relief may be granted. Therefore, the Court will deny a Certificate of Appealability. A separate Order will issue.

Dated: June 15, 2016.

_____
Lisa Pupo Lenihan
United States Magistrate Judge

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMES MICHAEL BERNARD, | ) | |
| | ) | Civil Action No. 14 – 115 |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Magistrate Judge Lisa Pupo Lenihan |
| | ) | |
| MICHAEL D. OVERMYER and KATHLEEN KANE, | ) ) | |
| | ) | |
| Respondents. | ) ) | |

## ORDER

**AND NOW**, this 15th day of June, 2016, and in accordance with the Court's Memorandum Opinion, **IT IS HEREBY ORDERED** that the Petition for Writ of Habeas Corpus (ECF No. 1) is denied.

**IT IS FURTHER ORDERED** that a Certificate of Appealability is denied.

**IT IS FURTHER ORDERED** that the Clerk of Court mark this case closed.

**AND IT IS FURTHER ORDERED** that, pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure, if Petitioner wishes to appeal from this Order a notice of appeal, as provided in Fed. R. App. P. 3, must be filed with the Clerk of Court, United States District Court, at 700 Grant Street, Room 3110, Pittsburgh, PA 15219, within thirty (30) days.

_____
Lisa Pupo Lenihan
United States Magistrate Judge

Cc: James Michael Bernard
 GZ-9482
 SCI Forest
 Post Office 945
 Marienville, PA 16239

 Counsel of record
 Via CM/ECF electronic mail